SEARS, ROEBUCK & CO. *v.* STIFFEL COMPANY.

No. 108.   Argued January 16, 1964.—Decided March 9, 1964.

*Will Freeman* argued the cause for petitioner.  With him on the briefs were *Frank H. Marks, D. D. Allegretti* and *George B. Newitt.*

*Warren C. Horton* argued the cause for respondent. With him on the brief was *Max R. Kraus.*

*Solicitor General Cox, Assistant Attorney General Orrick, Daniel M. Friedman* and *Lionel Kestenbaum* filed a brief for the United States, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The question in this case is whether a State's unfair competition law can, consistently with the federal patent laws, impose liability for or prohibit the copying of an article which is protected by neither a federal patent nor a copyright.  The respondent, Stiffel Company, secured design and mechanical patents on a "pole lamp"—a ver-

tical tube having lamp fixtures along the outside, the tube being made so that it will stand upright between the floor and ceiling of a room. Pole lamps proved a decided commercial success, and soon after Stiffel brought them on the market Sears, Roebuck & Company put on the market a substantially identical lamp, which it sold more cheaply, Sears' retail price being about the same as Stiffel's wholesale price. Stiffel then brought this action against Sears in the United States District Court for the Northern District of Illinois, claiming in its first count that by copying its design Sears had infringed Stiffel's patents and in its second count that by selling copies of Stiffel's lamp Sears had caused confusion in the trade as to the source of the lamps and had thereby engaged in unfair competition under Illinois law. There was evidence that identifying tags were not attached to the Sears lamps although labels appeared on the cartons in which they were delivered to customers, that customers had asked Stiffel whether its lamps differed from Sears', and that in two cases customers who had bought Stiffel lamps had complained to Stiffel on learning that Sears was selling substantially identical lamps at a much lower price.

The District Court, after holding the patents invalid for want of invention, went on to find as a fact that Sears' lamp was "a substantially exact copy" of Stiffel's and that the two lamps were so much alike, both in appearance and in functional details, "that confusion between them is likely, and some confusion has already occurred." On these findings the court held Sears guilty of unfair competition, enjoined Sears "from unfairly competing with [Stiffel] by selling or attempting to sell pole lamps identical to or confusingly similar to" Stiffel's lamp, and ordered an accounting to fix profits and damages resulting from Sears' "unfair competition."

The Court of Appeals affirmed.[1]   313 F. 2d 115.   That court held that, to make out a case of unfair competition under Illinois law, there was no need to show that Sears had been "palming off" its lamps as Stiffel lamps; Stiffel had only to prove that there was a "likelihood of confusion as to the source of the products"—that the two articles were sufficiently identical that customers could not tell who had made a particular one.   Impressed by the "remarkable sameness of appearance" of the lamps, the Court of Appeals upheld the trial court's findings of likelihood of confusion and some actual confusion, findings which the appellate court construed to mean confusion "as to the source of the lamps."   The Court of Appeals thought this enough under Illinois law to sustain the trial court's holding of unfair competition, and thus held Sears liable under Illinois law for doing no more than copying and marketing an unpatented article.[2]   We granted certiorari to consider whether this

---

[1] No review is sought here of the ruling affirming the District Court's holding that the patent is invalid.

[2] 313 F. 2d, at 118 and nn. 6, 7.   At least one Illinois case has held in an exhaustive opinion that unfair competition under the law of Illinois is not proved unless the defendant is shown to have "palmed off" the article which he sells-as that of another seller; the court there said that "[t]he courts in this State do not treat the 'palming off' doctrine as merely the designation of a typical class of cases of unfair competition, but they announce it as the rule of law itself—the test by which it is determined whether a given state of facts constitutes unfair competition as a matter of law. . . .   The 'palming off' rule is expressed in a positive, concrete form which will not admit of 'broadening' or 'widening' by any proper judicial process." *Stevens-Davis Co.* v. *Mather & Co.*, 230 Ill. App. 45, 65–66 (1923).   In spite of this the Court of Appeals in its opinions both in this case and in *Day-Brite Lighting, Inc.*, v. *Compco Corp.*, 311 F. 2d 26, rev'd, *post*, p. 234, relied upon one of its previous decisions in a trade-name case, *Independent Nail & Packing Co.* v. *Stronghold Screw Products*, 205 F. 2d 921 (C. A. 7th Cir. 1953), which concluded that as to use

use of a State's law of unfair competition is compatible with the federal patent law. 374 U. S. 826.

Before the Constitution was adopted, some States had granted patents either by special act or by general statute,[3] but when the Constitution was adopted provision for a federal patent law was made one of the enumerated powers of Congress because, as Madison put it in *The Federalist* No. 43, the States "cannot separately make effectual provision" for either patents or copyrights.[4] That constitutional provision is Art. I, § 8, cl. 8, which empowers Congress "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Pursuant to this constitu-

of trade names the *Stevens-Davis* rule had been overruled by two subsequent Illinois decisions. Those two cases, however, discussed only misleading use of trade names, not copying of articles of trade. One prohibited the use of a name so similar to that of another seller as to deceive or confuse customers, even though the defendant company did not sell the same products as the plaintiff and so in one sense could not be said to have palmed off its goods as those of a competitor, since the plaintiff was not a competitor. *Lady Esther, Ltd.,* v. *Lady Esther Corset Shoppe, Inc.,* 317 Ill. App. 451, 46 N. E. 2d 165 (1943). The other Illinois case on which the Court of Appeals relied was a mandamus action which held that under an Illinois statute a corporation was properly denied registration in the State when its name was "deceptively similar" to that of a corporation already registered. *Investors Syndicate of America, Inc.,* v. *Hughes,* 378 Ill. 413, 38 N. E. 2d 754 (1941). The Court of Appeals, by holding that because Illinois forbids misleading use of trade names it also forbids as unfair competition the mere copying of an article of trade without any palming off, thus appears to have extended greatly the scope of the Illinois law of unfair competition beyond the limits indicated in the Illinois cases and beyond any previous decisions of the Seventh Circuit itself. Because of our disposition of these cases we need not decide whether it was correct in doing so.

[3] See I Walker, Patents (Deller ed. 1937), § 7.

[4] The Federalist (Cooke ed. 1961) 288.

tional authority, Congress in 1790 enacted the first federal patent and copyright law, 1 Stat. 109, and ever since that time has fixed the conditions upon which patents and copyrights shall be granted, see 17 U. S. C. §§ 1–216; 35 U. S. C. §§ 1–293. These laws, like other laws of the United States enacted pursuant to constitutional authority, are the supreme law of the land. See *Sperry* v. *Florida,* 373 U. S. 379 (1963). When state law touches upon the area of these federal statutes, it is "familiar doctrine" that the federal policy "may not be set at naught, or its benefits denied" by the state law. *Sola Elec. Co.* v. *Jefferson Elec. Co.,* 317 U. S. 173, 176 (1942). This is true, of course, even if the state law is enacted in the exercise of otherwise undoubted state power.

The grant of a patent is the grant of a statutory monopoly; [5] indeed, the grant of patents in England was an explicit exception to the statute of James I prohibiting monopolies.[6] Patents are not given as favors, as was the case of monopolies given by the Tudor monarchs, see *The Case of Monopolies (Darcy* v. *Allein),* 11 Co. Rep. 84 b., 77 Eng. Rep. 1260 (K. B. 1602), but are meant to encourage invention by rewarding the inventor with the right, limited to a term of years fixed by the patent, to exclude others from the use of his invention. During that period of time no one may make, use, or sell the patented

---

[5] Patent rights exist only by virtue of statute. *Wheaton* v. *Peters,* 8 Pet. 591, 658 (1834).

[6] The Statute of Monopolies, 21 Jac. I, c. 3 (1623), declared all monopolies "contrary to the Laws of this Realm" and "utterly void and of none Effect." Section VI, however, excepted patents of 14 years to "the true and first Inventor and Inventors" of "new Manufactures" so long as they were "not contrary to the Law, nor mischievous to the State, by raising Prices of Commodities at home, or Hurt of Trade, or generally inconvenient . . . ." Much American patent law derives from English patent law. See *Pennock* v. *Dialogue,* 2 Pet. 1, 18 (1829).

product without the patentee's authority. 35 U. S. C. § 271. But in rewarding useful invention, the "rights and welfare of the community must be fairly dealt with and effectually guarded." *Kendall* v. *Winsor,* 21 How. 322, 329 (1859). To that end the prerequisites to obtaining a patent are strictly observed, and when the patent has issued the limitations on its exercise are equally strictly enforced. To begin with, a genuine "invention" or "discovery" must be demonstrated "lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." *Cuno Engineering Corp.* v. *Automatic Devices Corp.,* 314 U. S. 84, 92 (1941); see *Great Atlantic & Pacific Tea Co.* v. *Supermarket Equipment Corp.,* 340 U. S. 147, 152–153 (1950); *Atlantic Works* v. *Brady,* 107 U. S. 192, 199–200 (1883). Once the patent issues, it is strictly construed, *United States* v. *Masonite Corp.,* 316 U. S. 265, 280 (1942), it cannot be used to secure any monopoly beyond that contained in the patent, *Morton Salt Co.* v. *G. S. Suppiger Co.,* 314 U. S. 488, 492 (1942), the patentee's control over the product when it leaves his hands is sharply limited, see *United States* v. *Univis Lens Co.,* 316 U. S. 241, 250–252 (1942), and the patent monopoly may not be used in disregard of the antitrust laws, see *International Business Machines Corp.* v. *United States,* 298 U. S. 131 (1936); *United Shoe Machinery Corp.* v. *United States,* 258 U. S. 451, 463–464 (1922). Finally, and especially relevant here, when the patent expires the monopoly created by it expires, too, and the right to make the article—including the right to make it in precisely the shape it carried when patented—passes to the public. *Kellogg Co.* v. *National Biscuit Co.,* 305 U. S. 111, 120–122 (1938); *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S. 169, 185 (1896).

Thus the patent system is one in which uniform federal standards are carefully used to promote invention

while at the same time preserving free competition.[7] Obviously a State could not, consistently with the Supremacy Clause of the Constitution,[8] extend the life of a patent beyond its expiration date or give a patent on an article which lacked the level of invention required for federal patents. To do either would run counter to the policy of Congress of granting patents only to true inventions, and then only for a limited time. Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws.

In the present case the "pole lamp" sold by Stiffel has been held not to be entitled to the protection of either a mechanical or a design patent. An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so. What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws. That Stiffel originated the pole lamp and made it popular is immaterial. "Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested." *Kellogg Co.* v. *National Biscuit Co., supra,* 305 U. S., at 122. To allow a State by use of its law of unfair competition to prevent the copying of an article which rep-

---

[7] The purpose of Congress to have national uniformity in patent and copyright laws can be inferred from such statutes as that which vests exclusive jurisdiction to hear patent and copyright cases in federal courts, 28 U. S. C. § 1338 (a), and that section of the Copyright Act which expressly saves state protection of unpublished writings but does not include published writings, 17 U. S. C. § 2.

[8] U. S. Const., Art. VI.

resents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public. The result would be that while federal law grants only 14 or 17 years' protection to genuine inventions, see 35 U. S. C. §§ 154, 173, States could allow perpetual protection to articles too lacking in novelty to merit any patent at all under federal constitutional standards. This would be too great an encroachment on the federal patent system to be tolerated.

Sears has been held liable here for unfair competition because of a finding of likelihood of confusion based only on the fact .that Sears' lamp was copied from Stiffel's unpatented lamp and that consequently the two looked exactly alike. Of course there could be "confusion" as to who had manufactured these nearly identical articles. But mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied. Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.[9] But because of the federal patent laws a State may not, when the article is unpatented and uncopyrighted, prohibit the

---

[9] It seems apparent that Illinois has not seen fit to impose liability on sellers who do not label their goods. Neither the discussions in the opinions below nor the briefs before us cite any Illinois statute or decision requiring labeling.

copying of the article itself or award damages for such copying. Cf. *G. Ricordi & Co.* v. *Haendler,* 194 F. 2d 914, 916 (C. A. 2d Cir. 1952). The judgment below did both and in so doing gave Stiffel the equivalent of a patent monopoly on its unpatented lamp. That was error, and Sears is entitled to a judgment in its favor.

*Reversed.*

[For concurring opinion of MR. JUSTICE HARLAN, see *post,* p. 239.]