**RIBACK ENTERPRISES, INC.,**
**Plaintiff-Appellee,**

v.

**George DENHAM et al., Defendants-**
**Appellants.**

**No. 277, Docket 71-1711.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 10, 1971.

Decided Nov. 26, 1971.

---

Jesse Rothstein, New York City (Amster & Rothstein, Krolik & Ochs, Daniel Ebenstein, New York City, on the brief), for defendants-appellants.

Richard F. Horowitz, New York City (Weiss, Bronston, Rosenthal, Heller & Schwartzman, New York City, on the brief), for plaintiff-appellee.

Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Judge.*

FEINBERG, Circuit Judge:

In early 1970, plaintiff Riback Enterprises, Inc. engaged defendant George Denham to sell its greeting cards in three eastern states, in part of a fourth and in Washington, D.C. Denham's job was to solicit orders directly from retailers and he was paid solely by commission. There was no written agreement between the parties. Apparently Denham also sold his own stationery products and those of other manufacturers, including greeting cards. At the time, Riback had been selling greeting cards called "Grinlets" for about two years. Riback describes Grinlets as "greeting card booklets * * * which express a novel concept and format conveying a fresh, joyful impression to which the words, pictorial figures and entire assembly of the booklets contribute." [1] Defendants, understandably less lyrical, tell us that plaintiff's product is "a multiple page, multiple color greeting card * * * [which] consist[s] of three sheets of colored paper folded and stapled together in the form of a booklet in such a way that the booklet pages are of progressively greater width from the front to the back of the booklet. This

---

* Of the United States Court of Claims, sitting by designation.

1. Plaintiff-Appellee's brief at 4.

construction exposes the right hand edge of each page beyond the right hand edge of the proceeding page so that the alternating colored pages are visible at the right hand side of the booklet when the booklet is closed. In addition to providing a colorful visual effect, this structure facilitates turning the pages of the booklet, each of which includes drawings featuring a cartoon character and text intended to be read successively and communicating a greeting message." [2] However viewed, Grinlets were successful enough to inspire imitation. Although plaintiff claims to be the first to produce them, various competitors sell booklets of similar format and type. Included in this group are greeting cards called "Love Pups," which are the subject of this lawsuit.

In February 1971, at a time when defendant Denham was still Riback's commission sales agent, Riback discovered that Denham and the other two individual defendants had a booth at the New York Gift Show displaying Love Pups. Understandably put out, Riback immediately began this action for injunctive relief and for damages in the United States District Court of the Southern District of New York, alleging trademark and copyright infringement, as well as unfair competition and breach of fiduciary obligations.[3] Not surprisingly, Riback also fired Denham. Two weeks later, Riback's motion for a preliminary injunction was heard by Judge Dudley B. Bonsal, who granted the motion, 327 F.Supp. 763. The judge put to one side Riback's copyright and trademark claims as unnecessary to his decision. As to the alleged misappropriation of trade secrets, the judge held that "the evidence does not disclose any * * *." The injunction instead was based on the theory that defendants had been unfairly competing with plaintiff:

The court finds that the defendants have imitated the format of the Grin-

lets booklets in their Love Pups booklets, and that a prospective purchaser of greeting card booklets would believe that both sets of booklets were produced by a single company which wished to feature more than one character in its line of booklets. Moreover, the defendants' use at the Gift Show of a display rack for Love Pups identical to the one used by Riback for Grinlets in its retail outlets indicates that the defendants intend to identify their product as closely as possible with Riback's. In those areas where Denham had acted as Riback's salesman, such a marketing practice would probably cut deeply into Riback's sales. Clearly, the defendants' activities constitute unfair competition and provide the court with ample grounds for issuing a preliminary injunction. [Citations omitted.]

The court broadly enjoined defendants:

pendente lite from selling greeting card booklets which have the same format as greeting card booklets known as "Grinlets" * * *.

That preliminary injunction is the subject of this appeal.

■ Defendants argue to us that under Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), which were unaccountably not called to the attention of the district court, the injunction is much too expansive to stand. In Sears, plaintiff Stiffel Company had designed and successfully marketed a distinctive "pole lamp." Defendant then began selling "a substantially identical lamp" at a lower price, and there was some evidence of actual confusion among purchasers. 376 U.S. at 226, 84 S.Ct. 784. The district court, although concluding that plaintiff's design patent was invalid, nevertheless found that Sears was guilty of unfair competition

2. Defendants-Appellants' brief at 3.

3. Jurisdiction was based upon diversity of citizenship, 28 U.S.C. § 1332, as well as upon 28 U.S.C. § 1338(a) & (b).

and enjoined the sale of its pole lamps. The Court of Appeals for the Seventh Circuit affirmed, but the Supreme Court unanimously reversed,[4] stating (376 U.S. at 231, 232, 84 S.Ct. at 789):

> What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws. That Stiffel originated the pole lamp and made it popular is immaterial. "Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested." Kellogg Co. v. National Biscuit Co., *supra*, 305 U.S. 111, at 122, [59 S.Ct. 109, 83 L. Ed. 73].

> Sears has been held liable here for unfair competition because of a finding of likelihood of confusion based only on the fact that Sears' lamp was copied from Stiffel's unpatented lamp and that consequently the two looked exactly alike. Of course there could be "confusion" as to who had manufactured these nearly identical articles. But mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied.

In *Compco*, the Court applied the same reasoning in reversing a similar injunction against copying and selling a lighting fixture even though plaintiff Day-Brite's product had acquired a secondary meaning. 376 U.S. at 235, 84 S.Ct. 780. The Court characterized its *Sears* decision as holding "that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article." Id. at 237, 84 S.Ct. at 782.

Under these cases, the order appealed from here was clearly improper. The district court, relying solely on plaintiff's claim of unfair competition,[5] issued an injunction that completely cut off defendants' right to sell greeting cards "which have the same format as * * * Grinlets." But plaintiff has no more right to keep defendants from selling greeting cards because they imitate the format of its Grinlets than Stiffel Company or Day-Brite had to prevent competitors from selling imitations of their pole lamps and lighting fixtures. We do not mean to suggest that defendants may with impunity pass-off their cards as Riback's. Indeed, in *Sears* the Court expressly noted just the opposite (376 U.S. at 232–233, 84 S.Ct. at 789):

> Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods. But because of the federal patent laws a State may not, when the article is unpatented and uncopyrighted, prohibit the copying of the article itself or award damages for such copying. [Footnote omitted.]

In the present case, however, the evidence of intentional passing-off is insuf-

---

4. Mr. Justice Harlan concurred in a separate opinion.

5. The district court disclaimed reliance on the claimed infringement of plaintiff's trademark and copyright. Although we do not pass upon the merits of these claims, we do note that plaintiff somewhat implausibly alleges that its trademark Grinlets and its trademark design which does not include a dog are infringed by a trademark Love Pups and a booklet "bearing a pictorial representation of a little puppy dog." Also, as to the claim of copyright infringement, the printed matter in the competing cards is apparently different from that in Grinlets.

ficient to sustain the injunction. The display stand used by defendants at the Gift Show may have been similar to plaintiff's, but it was apparently a conventional type. Moreover, the identity of Denhams as the manufacturer and distributor of Love Pups was clearly indicated on the back of each card, where the buyers at the Gift Show would look for it. In any event, the injunction was not limited to mislabeling or to requiring "those who make and sell copies to take precautions to identify their products as their own." *Compco*, 376 U.S. at 238, 84 S.Ct. at 782. The injunction instead impermissibly cut off all sales of Love Pups, and must be set aside.

■ Riback argues mightily to us that the injunction was proper because Denham, with the assistance of his two co-defendants, breached his fiduciary obligation to Riback. How extensive that obligation was we need not decide. The district court apparently did not base the injunction on any such theory, although it did indicate sympathy for plaintiff's view. In any event, the injunction could not be defended on the basis of a breach of fiduciary duty since the court found no use of trade secrets, and preliminary injunctive relief was sought after Riback had terminated its relationship with Denham.[6] See generally Public Relations Aids, Inc. v. Hyman V. Wagner and Media Distribution Service, Inc., 37 A.D.2d 293, 324 N.Y.S.2d 920 (1st Dep't, 1971); Hercules Packing Corp. v. Steinbruckner, 28 A.D.2d 635, 280 N.Y.S.2d 423 (4th Dep't), appeal dismissed, 20 N.Y.2d 757, 283 N.Y.S.2d 174, 229 N.E.2d 842 (1967). We express no view on whether Riback may be entitled to damages caused by Denham's allegedly faithless activities when he was still Riback's commission salesman.

The preliminary injunction is set aside and the case is remanded for further proceedings consistent with this opinion.

---

6. The motion for a preliminary injunction, brought on by order to show cause, was filed on February 26, 1971, the same day the complaint was filed. At that time, Denham was still technically in the employ of Riback. However, Denham "was fired immediately after the commencement of this lawsuit." Reply Memorandum in Support of Motion for Preliminary Injunction p. 3. Plaintiff's motion for injunctive relief did not come on for hearing until March 9, well after the time Denham had been fired.