**BOSE CORPORATION, Plaintiff-Appellant,**

v.

**LINEAR DESIGN LABS, INC., et al., Defendants-Appellees.**

**No. 920, Docket 71–2207.**

United States Court of Appeals, Second Circuit.

Argued Aug. 18, 1972.

Decided Sept. 21, 1972.

Charles Hieken, Waltham, Mass. (Roy C. Hopgood, Stephen B. Judlowe, Sandoe, Hopgood & Calimafde, New York City, on the brief), for plaintiff-appellant.

Lawrence J. Swire, New York City (White & Coch, New York City, on the brief), for defendants-appellees.

Before MANSFIELD and TIMBERS, Circuit Judges, and GURFEIN, District Judge.*

GURFEIN, District Judge.

Bose Corporation (Bose) appeals from an order of the United States District Court for the Southern District of New York (Motley, J.), 340 F.Supp. 513, denying, after hearing, a motion for a preliminary injunction against infringement of the Bose patent issued June 1, 1971 relating to a pair of high fidelity loudspeakers known as the Bose 901.

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

Judge Motley also refused to enjoin the defendant Linear Design Labs, Inc. (LDL) pendente lite from distributing its similarly designed loudspeakers without placing the name of LDL on a normally visible surface.[1] A motion to enjoin the defendants from distributing an advertisement and a brochure describing their product on the ground that these documents contain certain false and misleading representations damaging to Bose was also denied. In sum, Bose was afforded no preliminary relief for alleged patent infringement, violation of the Lanham Act or unfair competition. We affirm the denial of injunctive relief as within Judge Motley's discretion. Imperial Chemical Industries, Ltd. v. National Distillers and Chemical Corp., 354 F.2d 459 (2 Cir. 1965). The standard she applied was correct. The plaintiff must show both likelihood of success and that withholding relief will result in irreparable harm. Clairol, Inc. v. Gillette Co., 389 F.2d 264, 265 (2 Cir. 1968).[2] We direct a modification of her order in one respect, however, for reasons that will appear.

Bose based its claim to relief (1) on alleged infringement of its patents No. 3,582,553 ('553), particularly Claim 35, issued on June 1, 1971, and No. 3,038,964 ('964), issued on June 12, 1962, (2) on the ground that the defendants are distributing their LDL 749 loudspeaker in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and are guilty of unfair competition in their simulation of the plaintiff's trade dress and in misrepresentations in sales literature.

Bose manufactures and markets a Bose 901 loudspeaker which embodies patents '553 and '964, the housing cabinet for which is pentagonal in shape. Its inventor, Dr. Amar G. Bose, is a pro-fessor at M.I.T. He states that he designed the Bose 901 for "optimum performance when in an actual listening area having an adjacent wall comprising part of the sound radiating system." The speakers are designed to simulate in the home the reflected and direct sound present in a concert hall. Each Bose 901 has eight long-excursion high compliance four-inch speakers mounted on the rear panels and a single speaker in front. The two rear panels meet at an obtuse angle. The eight speakers at the back are mounted in clusters of four. The five sides of the speaker are covered with grill cloth and separate top and bottom walnut panels of pentagonal shape. Each four-inch speaker has a one-inch diameter voice coil with an eight-ohm impedance and a ten-ounce magnet. The dimensions of the Bose 901 are 20½″ by 12¾″ by 12⅞″. The normally visible areas of a Bose 901 speaker do not carry the Bose name. The name appears only on the bottom of the speaker and on the front panel of a separately packaged electronic equalizer. Judge Motley found that each LDL 749 cabinet which houses its loudspeaker system is similarly pentagonal in shape. LDL 749 cabinets also have eight long-excursion high compliance four-inch speakers mounted on the rear panels and a single speaker in front, two rear panels which meet at an obtuse angle slightly different from the Bose 901; and the eight speakers at the back are also mounted in clusters of four. The LDL four-inch speakers have the same eight-ohm impedance, the same one-inch voice coil diameter, and the same ten-ounce magnet. LDL 749 dimensions are 19½″ by 12½″ by 12″. The five sides of the LDL 749 speaker are also covered with grill cloth which separates top and bottom panels of pentagonal shape.

Unlike the Bose 901, the LDL 749 has a black colored grill cloth while the Bose

---

1. George C. Cuatero, the other defendant is the president and principal in interest of LDL.

2. The District Court found that "no unbiased, non-speculative evidence of irrep-arable injury to plaintiff was offered. No substantial monetary damage to plaintiff has been shown. The number of speakers actually sold by defendants has been relatively small, 35 pair, as opposed to 10,000 pair in one year by Bose."

901 has a beige or gray and white colored grill cloth. The top and bottom panels on both models are made of walnut wood, but the Bose 901 panels prominently overhang. The Bose 901 also has vertical walnut posts at the front corners of the cabinet while the LDL 749 has only one post in the back. The top and bottom panels on the Bose 901 form a wider angle than the LDL 749. The two rear panels of the Bose 901 on which the speaker clusters are mounted form an angle of 120° whereas the angle formed by the similar rear panels in the LDL 749 form an angle of 134°.

LDL's name appears on the front of its cabinet in the lower right hand corner, on the carton in which it is shipped, and on all of its sales and promotional literature.

For the purposes of the motion for a preliminary injunction, based on patent infringement, Bose relied upon only one claim, Claim 35 of its '553 patent (June 1, 1971), as the basis for its allegation that defendants have been and are infringing its Letters Patent. That claim reads as follows:

> "35. A loudspeaker system comprising sound radiating means, and means for supporting said sound radiating means for directing of the order of 87 percent of the sound energy therefrom upon a reflecting surface and then to a listener when said sound radiating means is normally positioned in a room while directing of the order of 13 percent of the sound energy therefrom directly to a listener when said sound radiating means is normally positioned in a room."

I

■ This Court is again confronted with the propriety of issuing a preliminary injunction in a patent infringement case where infringement seems fairly clear if the patent infringed is valid. In Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867 (2 Cir. 1971) the Court reaffirmed the doctrine that, as Judge Learned Hand put it, "an injunction pendente lite in a patent suit should not go except when the patent is beyond question valid and infringed." Simson Bros. v. Blancard & Co., 22 F.2d 498, 499 (2 Cir. 1927). Judge Motley in a careful opinion held that the patent here is not "beyond question valid." Appellant argues that the Carter-Wallace doctrine is not inflexible and that on its facts that case is distinguishable from the case at bar.

■ Bose must concede that there has been no prior adjudication of validity. Nor has there been long public acquiescence since the Bose patent was issued only in June of 1971. The appellant contends, however, that White v. Leanore Frocks, Inc., 120 F.2d 113 (2 Cir. 1941) was not overruled in Carter-Wallace. In the White case, this Court stated:

> It is true that in infringement actions it does not inexorably follow that the patentee can have no relief, pendente lite, though his patent has never been adjudicated and though the public has shown no acquiescence in it. There are exceptional cases when he may so bolster it up as to get immediate protection though these are rare indeed. 120 F.2d at 114 (citations omitted).

The appellant concedes that "the language of Carter-Wallace is such as to cast serious doubt as to whether there is any vitality in the dictum of White," but it urges that this Court reconsider the implications of Carter-Wallace and also find this to be an "exceptional case." We decline to do so.

It is true that in Carter-Wallace there was proof of the prior art which had not been called to the attention of the Patent Office (443 F.2d at 875–880). Here there is no specific prior art proved by the appellee which falls into that category. In this respect, novelty may be assumed, to the extent that there is, indeed, differentiation between novelty of invention and non-obviousness. See Lemelson v. Topper Corporation, 450 F.2d 845, 848 (2 Cir. 1971), cert. denied, 405

U.S. 989, 92 S.Ct. 1253, 31 L.Ed.2d 456 (1972).

Judge Motley did not make a finding on novelty of invention. She did rely on 35 U.S.C. § 103 (Patent Act of 1952) to hold that the plaintiff had failed to show non-obviousness. We affirm her decision not because of this finding but because the plaintiff has failed to meet the *Carter-Wallace* tests for injunctive relief, pendente lite: an adjudicated patent or long acquiescence by the industry —in short, that the patent is valid beyond question. Because of the short time that has elapsed since its issue, the failure of the appellee to demonstrate prior art, unknown to the Patent Office, does not itself establish the patent to be valid beyond question.

At the hearing below defendants argued that Claim 35 embodies no more than the elementary concept embodied in every concert hall where the orchestra is placed in front of a proper back wall. We do not necessarily agree with the District Court that, in view of this contention, "it is plain that the test of non-obviousness which the claim must survive to be held valid will be difficult in this case." Without deciding that issue, we note that it should be open to proof that fashioning a loudspeaker that would radiate of the order of 87% of the sound first toward a reflecting surface when normally positioned in a room and the remaining sound of the order of 13% directly into the listening area was not necessarily such subject matter as to render it "obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103. The extended research for a period of ten years and the absence of compelling references to cite against the Bose claim may be found to negate such obviousness. See United States v. Adams, 383 U.S. 39, 52, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). Elements may, of course, take on some new quality or function being brought into concert with one another, especially in chemistry or electronics. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). And while Section 103 of the 1952 Patent Act places emphasis on an inquiry into obviousness, "the general level of innovation necessary to sustain patentability remains the same" as it was under the Patent Act of 1793 and the principles announced by the Supreme Court in Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1851). Graham v. John Deere Co., 383 U.S. 1, 4, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The attempts of others, like Phillips, without success, to utilize in loudspeakers the common knowledge that in a concert hall 87% of the sound is reflected may tend to refute obviousness.

Since the constitutional purpose of a patent monopoly is "to promote the progress of science and useful arts . . . ." (U.S.Const. art. I, § 8), the trial Court may also consider whether the extensive research into how to achieve a calibrated system that would closely approximate a perfectly calibrated source was promotion of the progress of science, as distinguished from the mere application of a mechanical principle already known which would make the subject matter obvious to a "person having ordinary skill in the art" (35 U.S.C. § 103).

## II

The motion for an injunction under § 43(a) of the Lanham Act was also properly denied. Section 43(a), which is set out in the margin deals with affixation or use of a "false designation of origin" "or any false description or representation" of goods or services in interstate commerce. There is no claim that LDL has put Bose's name on its goods or otherwise made fraudulent representations of origin. Appellant makes two claims for relief under the Lanham Act, § 43(a): (A) It is contended that the unique pentagonal shape of the Bose 901 loudspeaker system which Bose deliberately markets without affixing its name, relying on the uniqueness of product design, is a common law trade mark. It is said to indicate its origin as Bose. The

LDL product, as a copy of appellant's trade dress, is said to constitute a false representation of origin. (B) Appellant also contends that false representations in an advertising brochure describing LDL's own product entitles Bose to relief as one "likely to be damaged" within the meaning of § 43(a) of the Lanham Act. Interstate commerce sufficient for jurisdictional purposes is assumed by both parties.

### A.

We deal first with the claim that the simulation of trade dress warrants relief under § 43(a),[3] which does not require the trademark to be a registered trademark. Appellant claims no design patent.[4] It may be that product appearance, in its non-functional aspects, can support a holding under § 43(a) of the Lanham Act that the design functions as a trademark to indicate origin, if it has acquired a secondary meaning, since trademark protection is separate from that afforded by a design patent. See Application of Mogen David Wine Corporation, 328 F.2d 925, 930 (C.C.P.A.1964); Feathercombs, Inc. v. Solo Products Corporation, 306 F.2d 251 (2 Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962); and see Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watches, Inc., 221 F.2d 464 (2d Cir.), cert. denied, 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743 (1955).[5] And it is, perhaps, only a step beyond the protection given under the Lanham Act to unique and long standing packaging of the product itself where imitative containers are used. Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6 Cir. 1963).[6]

Bose sought relief below on the claim that the LDL speaker cabinet, allegedly designed to simulate its own, failed to bear the LDL name. The District Court found, however, that the LDL now does bear the LDL name on the lower right front of the cabinet, on the carton in which it is shipped, and on all its sales literature. The presence of its name on the product goes far to eliminate confusion of origin.[7] See Compco Corpora-

---

3. 15 U.S.C. § 1125(a) reads:

   "Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

4. It may be that the design fails to meet the ornamental prerequisite of the statute, 35 U.S.C. § 171. See Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 696 (2 Cir. 1961).

5. "The mere copying of functional features, absent some fraudulent factor, is not unlawful. A contrary holding would be an unwarranted extension of patent and copyright protection." Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646, 648 (2 Cir. 1959).

6. In Riback Enterprises, Inc. v. Denham, 452 F.2d 845 (2 Cir. 1971) this Court was not required to pass on a Lanham Act § 43(a) claim, but only on a claim of unfair competition. It has been suggested, however, that the *Sears-Compco* doctrine, 376 U.S. 225, 84 S.Ct. 779, 11 L.Ed.2d 669; 376 U.S. 234, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) may not be a bar to a "Congressionally-created right of action for a particular kind of unfair competition." Herlands, J. in Bogene Inc. v. Whit-Mor Manufacturing Co. Inc., 253 F.Supp. 126, 128 (S.D. N.Y.1966).

7. The copying of an unpatented machine, even if it caused the public to be confused as to source rather than product would afford relief for unfair competition that would "go no further than to require the defendant to make plain to

tion v. Day-Brite Lighting Inc., 376 U.S. 234, 237, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 121, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 621 (2 Cir. 1962); but *cf. Mastercrafters, supra* (unfair competition).[8] On these facts, the District Court held that plaintiff had failed to establish a probability of success upon the trial, which does not strike us as unreasonable.

In the light of the finding it is unnecessary to decide whether the purported simulation of trade dress, in these circumstances, could give rise to a claim for relief under § 43(a) if the LDL name had not been affixed. *Cf.* Sears Roebuck and Co. v. Stiffel, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964).

Nor is the claim to preliminary relief for common law trademark infringement based on a simulated trade dress more convincing. For there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed.[9] And the mere act of copying would not amount to unfair competition. Sears Roebuck and Co. v. Stiffel, *supra*; General Time Instr. Co. v. United States Time Corp., 165 F.2d 853 (2 Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770 (1948); Day-Brite Lighting, Inc. v. Sandee Manufacturing Co., 286 F.2d 596 (7 Cir. 1960), cert. denied, 366 U.S. 963, 81 S.Ct. 1925, 6 L.Ed.2d 1255 (1961); Riback Enterprises, Inc. v. Denham, 452 F.2d 845 (2 Cir. 1971).

## B.

▮▮ We next turn our attention to the claim that Bose is entitled to relief under Section 43(a) because of alleged false representations in sales literature with respect to LDL's own product rather than Bose's.

Among the false representations allegedly made in the LDL brochure were representations that (a) the LDL 749 loudspeaker system has the most life-like reproduction of orchestral and vocal sounds without equalizers; (b) the LDL loudspeaker system has the most exacting reproduction of natural sound ever heard; (c) the angle at which each speaker is mounted is the secret of the LDL 749's overwhelming superiority and resulted from countless hours of research conducted by the defendants coupled with unyielding test determinations under varying acoustical conditions; and (d) the frequency response of the LDL 749 loudspeaker system has been measured at 30 to 20,000 Hz.[10] The plaintiff contends that it established each of the representations to be false.

The District Court found that "whether the LDL 749 is an inferior product in relation to the Bose 901 and whether certain claims made by the defendants in their literature as to the ability of the LDL to perform are false claims which have damaged Bose in the market place are disputed issues of fact." It did not resolve these issues of fact by finding their truth or falsity. It essentially found, therefore, that Bose had not come forward with adequate proof

---

buyers that the plaintiff was not the source of the machines sold by it." Modern Aids, Inc. v. R. H. Macy & Co., 264 F.2d 93, 94 (2 Cir. 1959).

8. This Court has limited *Mastercrafters* by pointing out that "[i]n that case there was abundant evidence of actual confusion, palming off and an intent to deceive." See Norwich Pharmacal Company v. Sterling Drug, Inc., 271 F.2d 569, 573 (2 Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960).

9. The District Judge specifically found that LDL had not used a photograph of the Bose 901 to sell its own product. Electronic Corporation of America v. Honeywell, Inc., 428 F.2d 191 (1 Cir. 1970) and Pic Design Corp. v. Bearings Specialty Co., 436 F.2d 804 (1 Cir. 1971), cited by Bose were cases of "palming off" goods as the plaintiff's.

10. A hertz (Hz) is the international unit of frequency equal to one cycle per second.

of the falsity of the allegations concerning the defendant's product.

It will be seen that the alleged misrepresentations consist largely of "puffing," except for the factual statement that the frequency response had been measured at 30 to 20,000 Hz. There was conflicting testimony on this subject.[11]

Appellant complains that the District Court failed to make findings on the crucial issues as required by Fed.R.Civ. P. 52(a). We recognize that findings are "of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction." Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774 (1940), but there are some issues of fact which cannot fairly be determined on affidavits or even on the preliminary hearing which is frequently short. To require an ultimate finding on such matters as whether claims of quality ascribed to a product are definitely false would be more likely to mandate guesswork than informed judgment. We construe Judge Motley's opinion to mean simply that the plaintiff has failed to sustain the burden of establishing at this early stage the falsity of the representations of quality.

It is unnecessary for us to decide whether proof of the falsity of these representations will support the granting of relief. Section 43(a) has been called a new statutory tort. L'Aiglon

Apparel v. Lana Lobell, Inc., 214 F.2d 649, 651 (3 Cir. 1954). And see Alum-A-Fold Shutter Corp. v. Folding Shutter Corp., 441 F.2d 556 (5 Cir. 1971). And it has been thought that the old "single source" rule has been abrogated by the statute so as to allow relief to others beside the single competitor. See Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., 23 F.R.D. 155, 161 (S.D.N.Y.1959, Bryan, J.).

We do not address ourselves to these matters, however, because we do not have before us the sufficiency of the complaint. With respect to what is before us now, we simply reaffirm that where there is a factual issue to be tried "there remains at least some doubt that the plaintiff will ultimately prevail on this issue, and we cannot say that the judge abused [her] discretion in denying a preliminary injunction." Joshua Meier Co. Inc. v. Albany Novelty Mfg. Co., 236 F.2d 144, 148 (2 Cir. 1956).

We will direct, however, that the order be modified to make the denial of the preliminary injunction conditioned upon the affixation of the LDL name to a normally visible surface of the speaker cabinet so as to insure continuance of the status quo that has been found to exist.

The order is affirmed with a direction that the preservation of the status quo provided for in this opinion be contained in a modified order.

---

11. Appellant also fears that the representation that lifelike reproduction can be achieved "without equalizers" will damage its good will because customers will think the "inferior quality" of the LDL is that of the Bose. To the extent that this goes to the issue of confusion of products, however, we have noted the presence of LDL's name on its product and packaging. To the extent that the plaintiff claims relief based on the alleged falsity of the statement that the LDL 749 has the most lifelike reproduction of sound *without equalizers*, Bose apparently failed to convince the District Court that the statement is false. We cannot on the printed record determine the quality of sounds emanating from the respective systems.