[Civ. No. 69160. Second Dist., Div. Seven. Mar. 20, 1984.]

NATIONAL SUBSCRIPTION TELEVISION,
Plaintiff and Respondent, v.
FORMULA INTERNATIONAL, INC., et al., Defendants and Appellants.

COUNSEL

Thomas E. Schatzel, Bruce G. Spicer and Kevin G. Rivette for Defendants and Appellants.

Latham & Watkins, John J. Lyons and Jeffrey A. Toder for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—Defendant Formula International, Inc. (Formula) appeals from a denial of a motion to set aside the preliminary injunction obtained by the plaintiff, National Subscription Television (National).

### Procedural and Factual Summary

National operates a subscription television business marketed under the name "ON-TV" (ON). National broadcasts its programming in Southern California during evening hours over KBSC, channel 52.

KBSC uses a scrambled signal to broadcast ON programming, so that ordinary television sets tuned to channel 52 receive unintelligible video. Subscribers to the ON programming are furnished decoders which unscramble the signals to provide intelligible reception.

National charges subscribers an installation fee plus a monthly fee of $22 to cover programming and rental of the decoder device.

Formula is a retail distributor of electronic parts in Southern California. Formula began selling its customers kits which include a parts list, a circuit board and all the instructions and components necessary to assemble a decoder which can unscramble the ON signals.

National brought suit against Formula, seeking to enjoin Formula from selling any device, kit or plan capable of intercepting its signals. National alleged that Formula's activities constitute unfair and unlawful business practice.

Formula failed to appear for the hearing on the preliminary injunction on July 14, 1982, and the court below issued the preliminary injunction National sought. Subsequently, Formula filed a motion to set aside the preliminary injunction on grounds that its failure to be present at the prior hearing was inadvertent and due to excusable neglect.

The court below heard Formula's motion, but denied its request to vacate the preliminary injunction. Formula appeals the rejection of its motion to vacate the preliminary injunction. Formula argues that the injunction impinges on its First Amendment right of free speech by restraining dissemination of scientific information. Formula further argues that the injunction, by precluding unsanctioned decoders, effectively grants National an exclusive patent to decoder devices. Such an exclusive right, Formula argues,

runs afoul of federal patent laws. Formula also contends that National has not made a sufficient showing of injury to warrant issuance of a preliminary injunction.

## Discussion

The injunction issued by the court below provides:

"IT IS ORDERED that during the pendency of this action defendant Formula International, Inc. and its officers, agents, servants, employees, representatives and all persons acting in concert or cooperation with them are hereby enjoined and restrained and commanded to desist from doing or attempting to do, or causing to be done, directly or indirectly, by any means, methods or devices whatsoever, or by any person or persons whomsoever, either or any or all of the following acts:

"Manufacturing, distributing or selling any device or any plan or kit for any device, or any printed circuit containing circuitry that is capable of, or is intended, designed, or represented to be capable of, intercepting or decoding any encoded subscription television transmission."

█ Formula contends that the injunction prevents dissemination of technical information, thus violating its freedom of speech. However, the activity enjoined essentially proscribes conduct and only incidentally affects speech. In a declaration in support of the application of the preliminary injunction (declaration of Michelle E. Reid), the declarant, an investigator for National, described the transaction Formula engaged in: "I walked up to the counter and the salesman asked if he could help me. I told the salesman that I wanted to purchase a kit to build an ON TV decoder. The salesman then picked up one of four identical white cardboard boxes which were stacked on the floor behind him, took a speaker box off a rack, and placed both items on the counter in front of me. He said that that equipment would cost $120.00, plus tax. I asked the salesman if the two items contained everything I would need to get ON TV. He responded that they did, but that I would have to build the decoder from the kit. He added that if I had any trouble assembling the kit I could bring it back and he would help me 'for a charge.'"

Formula seeks to characterize the sale of the kit as the sale of individual parts plus an independent dissemination of technical information on assembly. In *Space Age Products, Inc.* v. *Gilliam* (D.Del. 1980) 488 F.Supp. 775, 783, the court rejected First Amendment claims in the context of a statute prohibiting pyramid schemes. "To be sure, there can be no such

transaction of business without communication of some kind, so the prohibition of the course of conduct inevitably has an incidental effect on communication also. But this incidental effect does not trigger the kind of First Amendment analysis applied to legislation aimed at communication of information and ideas. As the Supreme Court has observed '. . . it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed.' [Citation.]"

Here, Formula has prepared instructions and diagrams on assembly of decoders. By enclosing assembly instructions in the kit, Formula cannot elevate the scrutiny under which a restraint may be imposed. The assembly instructions are merely incidental to sale of the kits.

■ The next issue is whether the injunction granted below conflicts with federal patent law. Formula argues that the order precludes Formula from dealing in staple articles of commerce to which National has no patentable interest.

In *Sears, Roebuck & Co.* v. *Stiffel Co.* (1964) 376 U.S. 225, 231 [11 L.Ed.2d 661, 667, 84 S.Ct. 784], the Supreme Court determined: "Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws. . . ." In *Sears,* "[w]hat Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws." (*Id.,* at p. 231 [11 L.Ed.2d at p. 667].)

Here, federal statutes have already been interpreted to prohibit the sale of *assembled* decoder devices. In *Chartwell Communications Group* v. *Westbrook* (6th Cir. 1980) 637 F.2d 459, a subscription television business operating under the "ON-TV" name sued to enjoin Moser and Westbrook from selling or distributing decoders designed to enable the purchasers to intercept Chartwell's signals without paying subscription fees. The court there found that section 605 of the Communications Act of 1934, 47 United States Code section 605, which prohibits the interception or aid in interception of radio communications, operates to bar the sale of unauthorized decoders. The court noted: "Chartwell stands to suffer irreparable harm if appellees are allowed to sell decoders during the pendency of the trial. Once an individual buys a decoder he is lost to Chartwell forever as a potential subscriber. If the injunction does not remain in effect appellees may sell decoders—and inflict significant harm on Chartwell's business. Therefore

the preliminary injunction is to remain in effect until final disposition." (*Id.,* at p. 467.)

Interpretation of state unfair competition law to prohibit the sale of assembled decoders or unassembled decoders is consistent with federal law. No manufacturer of decoders is precluded from selling decoders in a legitimate chain of distribution.

Formula asserts that the recent case, *Sony Corp.* v. *Universal City Studios, Inc.* (1984) 464 U.S. 417 [78 L.Ed.2d 574, 104 S.Ct. 774], demonstrates that television programmers cannot preclude distribution of articles of commerce which can be used to infringe on copyrighted works. However, in *Sony,* the Supreme Court held that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement *if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses."* (*Id.,* at p. — [78 L.Ed.2d at p. 592].) (Italics added.) In the case at bench, National detailed in its affidavits that the "device would have *no purpose other than decoding the transmissions of NST over Channel 52."* (Italics added.) In *Sony,* the court also noted that "[n]o issue concerning . . . the copying of programs transmitted on pay or cable television systems was raised." (*Id.,* at p. — [78 L.Ed.2d at pp. 581-582].)

█ Finally, Formula contends that the court below abused its discretion by granting an injunction without sufficient showing of actual injury. █ " 'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion.' . . . [¶] █ 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.] The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. [Citations.] Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . .' [Citations.] In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case . . . . 'In the last analysis the trial court must determine which party is the more

likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation].'" (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527-528 [67 Cal.Rptr. 761, 439 P.2d 889].)

As the court below noted, Formula's moving papers "admit, in essence, that defendant Formula is engaged in the conduct complained of by plaintiff—that is, selling unauthorized kits and instructions for making decoders capable of receiving plaintiff's signal, without paying for it." In *Chartwell Communications Group* v. *Westbrook, supra,* 637 F.2d at page 467, the court concluded that the plaintiff subscription television programmer "stands to suffer irreparable harm if appellees are allowed to sell decoders during the pendency of the trial. Once an individual buys a decoder he is lost to Chartwell forever as a potential subscriber."

The situation in the case before us shares identical rationale. Thus, the preliminary injunction should remain in effect until final disposition of the case.

Schauer, P. J., and Johnson, J., concurred.