# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3932

BRETFORD MANUFACTURING, INC.,

*Plaintiff-Appellant*,

v.

SMITH SYSTEM MANUFACTURING
CORPORATION,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 98 C 0287—**John F. Grady**, *Judge.*

———————

ARGUED DECEMBER 3, 2004—DECIDED AUGUST 8, 2005

———————

Before FLAUM, *Chief Judge*, and EASTERBROOK and
WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge*. Bretford makes a line of
computer tables that it sells under the name Connections™.
Since 1990 many of these tables have featured one rather
than two legs on each end. The leg supports a sleeve at-
tached to a V-shaped brace, making it easy to change the
table's height while keeping the work surface stable. Al-
though the sleeve and brace together look like a Y, Bretford
calls it the V-Design table, and we employ the same usage.

This illustration, from Bretford's web site, shows the idea:



Between 1990 and 1997 Bretford was the only seller of computer tables with a V-shaped height-adjustment system. It sold about 200,000 V-Design tables during that period. Smith System, one of Bretford's competitors, decided to copy the sleeve and brace for its own line of computer tables. Smith System made its initial sales of the knockoff product to the Dallas school system in 1997, and this trademark litigation quickly followed.

Invoking §43(a) of the Lanham Act, 15 U.S.C. §1125(a), Bretford contends that the V-shaped design is its product's trade dress, which Smith System has infringed. It also contends that Smith System engaged in "reverse passing off

when it incorporated some Bretford hardware into a sample table that it showed purchasing officials in Dallas. The parties waived their right to a jury trial, and the district court held evidentiary hearings and issued opinions over a number of years. Although at one point the judge found Smith System liable and awarded damages in Bretford's favor, he reversed course in light of *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000), and *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). See 286 F. Supp. 2d 969 (N.D. Ill. 2003) (final decision in Smith System's favor). The appeal presents two principal questions: whether Smith System is entitled to copy Bretford's design, and, if yes, whether it was nonetheless wrongful for Smith System to use Bretford components in a sample table shown to the Dallas buyers.

Section 43(a) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> . . .
>
> (3) In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

The Supreme Court held in *Wal-Mart* that the phrase "word, term, name, symbol, or device, or any combination thereof" includes distinctive aspects of a product's appearance, commonly known as trade dress. The Court added, however, that a product's physical design can not be deemed inherently distinctive, so that to prevail under §43(a) the producer must demonstrate "secondary meaning"—in other words, that consumers understand the design elements to signify the goods' *origin* and not just its attributes. Otherwise, the Court thought, it would be too easy to use the expense and risk of litigation to dissuade rivals from using their right to reverse-engineer and copy products, which they may do down to the last detail unless a feature of the product is protected by patent, copyright, or trademark law. See, e.g., *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964). Trademark law is designed to reduce the costs customers incur in learning who makes the product, and this also helps sellers obtain rewards from producing goods of consistent quality, for consumers will find it easier to find and buy goods with which they have been satisfied in the past. So when trade dress implies the product's origin it is protected as a trademark (unless it also is functional); but when consumers value the feature for its own sake rather than as a badge of origin, it may be copied freely.

The district court found that V-shaped legs do not signal Bretford as a source. The record supports this conclusion; indeed, Bretford has *no* evidence that the leg design prompts "Bretford" in buyers' minds. There are no surveys and no evidence of actual confusion. Both Bretford and Smith System sell through distributors and field representatives to sophisticated buyers who know exactly where their goods are coming from.

Many buyers ask for tables with V-shaped legs, and Bretford insists that this shows that they want its Connections™ furniture; quite the contrary, this form of specification does more to imply that the leg design is functional than to show that anyone cares who makes the table. In the end, all Bretford has to go on is the fact that it was the only maker of such tables for eight years and spent more than $4 million to promote sales. If that were enough to permit judgment in its favor, new entry would be curtailed unduly by the risk and expense of trademark litigation, for *every* introducer of a new design could make the same sort of claim. "Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based on alleged inherent distinctiveness." *Wal-Mart*, 529 U.S. at 213.

Originators such as Bretford may receive protection via design patents, and strictly aesthetic features of products may be copyrighted. "The availability of these and other protections greatly reduces any harm to the producer that might ensue" from limiting trademark protection to features that have acquired secondary meaning. *Wal-Mart*, 529 U.S. at 214. Bretford did not obtain patent or copyright protection, so it cannot block Smith System's copy-cat tables. Even if the record had evidence of secondary meaning, Bretford likely would lose because the leg design appears to be functional, but we need not explore that issue.

When Smith System decided to copy Bretford's table, it subcontracted the leg assemblies to a specialized metal fabricator, whose initial efforts were unsatisfactory. This left Smith System in a bind when the Dallas school system asked to see a table. Smith System cobbled a sample together by attaching the leg assembly from a Bretford table (which Smith System had repainted) to a top that Smith System had manufactured itself. (Who supplied other components, such as the cable guides and grommets, is disputed but irrelevant.) Dallas was satisfied and placed an order. All of the tables delivered to Dallas included legs manufactured by Smith System's subcontractor. Nonetheless, Bretford contends, by using its leg assemblies on even the one sample, Smith System engaged in reverse passing off and must pay damages.

Passing off or palming off occurs when a firm puts someone else's trademark on its own (usually inferior) goods; reverse passing off or misappropriation is selling someone else's goods under your own mark. See *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990). It is not clear what's wrong with reselling someone else's goods, if you first buy them at retail. If every automobile sold by DeLorean includes the chassis and engine of a Peugeot, with DeLorean supplying only the body shell, Peugeot has received its asking price for each car sold and does not suffer any harm. Still, the Supreme Court said in *Dastar* that "reverse passing off" can violate the Lanham Act if a misdescription of goods' origin causes commercial injury. Our opinion in *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986 (7th Cir. 2004), shows how this could occur.

*Dastar* added that the injury must be a *trademark* loss—which is to say, it must come from a misrepresentation of the goods' origin. Dastar thus had the right (so far as the Lanham Act is concerned) to incorporate into its videos footage taken and edited by others, provided that it manufactured the finished product and did not mislead anyone

about who should be held responsible for shortcomings. No one makes a product from scratch, with trees and iron ore entering one end of the plant and a finished consumer product emerging at the other. Ford's cars include Fram oil filters, Goodyear tires, Owens-Corning glass, Bose radios, Pennzoil lubricants, and many other constituents; buyers can see some of the other producers' marks (those on the radio and tires for example) but not others, such as the oil and transmission fluid. Smith System builds tables using wood from one supplier, grommets (including Teflon from du Pont) from another, and vinyl molding and paint and bolts from any of a hundred more sources—the list is extensive even for a simple product such as a table. If Smith System does not tell du Pont how the Teflon is used, and does not inform its consumers which firm supplied the wood, has it violated the Lanham Act? Surely not; the statute does not condemn the way in which all products are made.

Legs are a larger fraction of a table's total value than grommets and screws, but nothing in the statute establishes one rule for "major" components and another for less costly inputs. The right question, *Dastar* holds, is whether the consumer knows who has produced the finished product. In the *Dastar* case that was Dastar itself, even though most of the product's economic value came from elsewhere; just so when Smith System includes components manufactured by others but stands behind the finished product. The portion of §43(a) that addresses reverse passing off is the one that condemns false designations of origin. "Origin" means, *Dastar* holds, "the producer of the tangible product sold in the marketplace". 539 U.S. at 31. As far as Dallas was concerned, the table's "origin" was Smith System, no matter who made any component or subassembly.

Much of Bretford's argument takes the form that it is just "unfair" for Smith System to proceed as it did, making a sale before its subcontractor could turn out acceptable leg

assemblies. Businesses often think competition unfair, but federal law encourages wholesale copying, the better to drive down prices. Consumers rather than producers are the objects of the law's solicitude. If Smith System misled Dallas into thinking that it could supply high-quality tables, when its subcontractor could not match Bretford's welds and other attributes of Bretford's V-shaped leg assemblies, then the victim would be the Dallas school system. (As far as we are aware, however, Dallas is happy with the quality of the tables it received; it has not complained about a bait and switch.) As the Court observed in *Dastar*, creators of certain artistic works are entitled (along the lines of the European approach to moral rights) to control how their work is presented or altered by others. See 539 U.S. at 34-35, citing 17 U.S.C. §106A. See also *Lee v. A.R.T. Co.*, 125 F.3d 580 (7th Cir. 1997). Bretford's table is not a "work of visual art" under §106A (and the definition in 17 U.S.C. §101). Once Bretford sold its goods, it had no control over how customers used their components: the Lanham Act does not include any version of the "derivative work" right in copyright law. See 17 U.S.C. §106(2).

A brief word about state law brings this opinion to a close. Although Bretford contends that Smith System committed the tort of unfair competition under both Illinois and Texas law, its brief does not cite any statute or decision of either state's judiciary. A reference to one federal district court's understanding of Texas law, in a treatment less than a page long, does not preserve a contention. What do the Texas courts themselves say on this subject? It is not our job to do the legal research that Bretford has omitted. Claims under state law have been forfeited.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*