ESCADA AG, Escada Beaute Cosmetics GmbH & Co. KG and Escada Beaute Ltd., Plaintiffs,

v.

THE LIMITED, INC., Victoria's Secret Stores, Inc., Victoria's Secret Catalog, Inc., and Gryphon Development L.P., Defendants.

No. 92 Civ. 7530.

United States District Court, S.D. New York.

Jan. 21, 1993.

Anthony F. LoCicero, Amster, Rothstein & Ebenstein, New York City, for plaintiffs.

Frank J. Colucci, Colucci & Umans, New York City, for defendants.

## OPINION and ORDER

STANTON, District Judge.

Plaintiffs brought this action for trademark infringement, 15 U.S.C. § 1051, unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition and trademark infringement and dilution under N.Y.Gen.Bus.Law § 368–d. Defendants move for summary judgment dismissing the dilution claim.

## BACKGROUND

Plaintiffs design, manufacture and sell women's apparel and related goods, including fragrance products sold under the trademarks "Escada" and "Escada Margaretha Ley." (Complaint ¶ 1). According to the complaint, central to the Escada fragrance products is "a hand-blown glass crystal, heart-shaped bottle in which concentric heart shapes are embodied in raised glass, with a fanciful gold-tone metallic filigree on the shoulders of the bottle and a fluted, gold metallic bottle top containing a ruby red cabochon center." (Complaint ¶ 12). Plaintiffs received a certificate of trademark registration for the Escada design.

Defendants design, distribute and sell women's lingerie, apparel and beauty and bath products, including fragrance products in direct competition with plaintiffs. Recently, defendants introduced a line of fragrance products under the trademark "Rapture," sold in various versions of a heart-shaped bottle design. (Complaint ¶ 23). Plaintiffs allege that the Rapture bottle designs are confusingly similar to the Escada design, that defendants intentionally copied the design in order to ride the coattails of their successful product line, and that members of the trade and purchasing public may believe that the Rapture products are supplied by plaintiffs as part of a private label program. (Complaint ¶ 24–27).

Plaintiffs have filed a design patent application for at least one of their Escada bottle designs. Similarly, design patent applications have been filed for three of the defendants' Rapture bottle designs (Defs.' Statement of Uncontested Facts, ¶¶ 4–5) and the Patent and Trademark Office has apparently issued notices of allowances in connection with all three. (Defs.' Dec. 7, 1992 Mem. at 10).

## DISCUSSION

This motion concerns only plaintiffs' claim of dilution under N.Y.Gen.Bus.Law § 368–d. In their fourth claim for relief plaintiffs allege that "Defendants' actions in unlawfully appropriating and mimicking the Escada Bottle Design have resulted in the dilution of the Escada Bottle Design as a strong symbol." (Complaint ¶ 47). Plaintiffs seek a permanent injunction under the New York law which provides:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of confusion as to the source of goods or services.

■ To obtain an injunction under § 368–d a plaintiff must demonstrate (1) that his mark either (a) is distinctive or (b) has acquired a secondary meaning, (2) that there is a likelihood of dilution, and (3) predatory intent of the defendant. *See Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 625–26 (2d Cir.1983). Because it does not require direct competition between the parties, the statute operates to prevent such diluting uses as "Dupont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns and so forth." 1954 N.Y. Legis.Annual 49. The New York Court of Appeals has explained the purpose and scope of the protection against dilution:

The evil which the legislature sought to remedy was not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trademark or name.

*Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 544, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1165 (1977).

Since the statute is not aimed at the confusion caused by similar products, some courts have questioned the applicability of the New York dilution statute to trade dress cases. *See Olay Co., Inc. v. Cococare Products, Inc.,* 218 U.S.P.Q. 1028, 1044 (S.D.N.Y.1983) ("The statute, however, speaks in terms of 'likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name,' not in terms of trade dress."). *Accord Branch v. Oglivy & Mather, Inc.,* 16 U.S.P.Q.2d 1179 (S.D.N.Y.1990). *But see P.F. Cosmetique, S.A. v. Minnetonka, Inc.,* 605 F.Supp. 662, 671–73 (S.D.N.Y. 1985) (applying dilution claim to the trade dress packaging of beauty aids).

Several courts have held that the statute does not apply to cases such as this one, where the defendant is a direct competitor selling similar products. *See Franklin Electronic Publishers, Inc. v. Unisonic Products Corp.,* 763 F.Supp. 1, 5 (S.D.N.Y. 1991); *Weight Watchers International,*

*Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1284 (S.D.N.Y.1990). *But see Sage Realty Corp. v. Sage Group, Inc.,* 711 F.Supp. 134, 142 (S.D.N.Y.1989); *LeSportsac, Inc. v. K Mart Corp.,* 617 F.Supp. 316, 317 (E.D.N.Y.1985).

Defendants argue that because the bottle designs are subject to patent protection, the dilution claim is preempted by federal patent law. In *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 152, 109 S.Ct. 971, 978, 103 L.Ed.2d 118 (1989), the Supreme Court held that "state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." The reason for this was carefully enunciated:

The federal patent system thus embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years. '[The inventor] may keep his invention secret and reap its fruits indefinitely. In consideration of its disclosure and the consequent benefit to the community, the patent is granted. An exclusive enjoyment is guaranteed him for seventeen years, but upon expiration of that period, the knowledge of the invention inures to the people, who are thus enabled without restriction to practice it and profit by its use.'

The attractiveness of such a bargain, and its effectiveness in inducing creative effort and disclosure of the results of that effort, depend almost entirely on a backdrop of free competition in the exploitation of unpatented designs and innovations. The novelty and nonobviousness requirements of patentability embody a congressional understanding, implicit in the Patent Clause itself, that free exploitation of ideas will be the rule, to which the protection of a federal patent is the exception. Moreover, the ultimate goal of the patent system is to bring new designs and technologies into the public domain through disclosure. State law protection for techniques and designs whose disclosure has already been in-

duced by market rewards may conflict with the very purpose of the patent laws by decreasing the range of ideas available as the building blocks of further innovation. The offer of federal protection from competitive exploitation of intellectual property would be rendered meaningless in a world where substantially similar state law protections were readily available. To a limited extent, the federal patent laws must determine not only what is protected, but also what is free for all to use.

*Id.* at 150–52, 109 S.Ct. at 977–78 (citations omitted).

The Court, however, did not prohibit all regulation of potentially patentable designs: it is permissible for states to require that goods be labeled, or that other precautionary steps, not directed to the copying or reproduction itself, be taken to prevent consumers from being misled as to the source of a product. *Id.* at 154, 109 S.Ct. at 979. *See also, Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 238, 84 S.Ct. 779, 782, 11 L.Ed.2d 669 (1964). Thus, a state may, without conflicting with patent law, protect trade secrets, *Bonito Boats*, 489 U.S. at 165–66, 109 S.Ct. at 985, and forbid industrial espionage. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 487, 94 S.Ct. 1879, 1889, 40 L.Ed.2d 315 (1974). Such valid state unfair competition and trade secret law "was not aimed exclusively at the promotion of invention itself, and the state restrictions on the use of unpatented ideas were limited to those necessary to promote goals outside the contemplation of the federal patent scheme." *Bonito Boats*, 489 U.S. at 166, 109 S.Ct. at 985.

In regulating unfair competition a state may also give limited protection to a particular design to prevent consumer confusion. *Id.* at 157–58, 109 S.Ct. at 981. However, one cannot argue that the New York dilution statute serves that purpose in this case, for the statute does not require any showing of consumer confusion as to the source of goods or services. N.Y.Gen. Bus.Law § 368–d. *See Sally Gee, Inc. v.*

*Myra Hogan, Inc.*, 699 F.2d 621, 624 (2d Cir.1983).

The New York dilution statute as applied to potentially patentable designs goes beyond the limited regulation permitted by *Bonito Boats*. The protection plaintiffs seek is against copying their patentable designs. *See Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1448 (Fed. Cir.1984) ("The key to determining whether the *Sears* and *Compco* cases prohibit a state action is whether a design is of the type on which a patent may issue."). Under the statute, plaintiffs attempt to enjoin defendants from making, using or selling bottle designs which allegedly mimic the Escada bottle design. Such an application of the dilution statute is not limited to a specific goal outside the contemplation of the federal patent scheme.

Were the statute to be so applied, a would-be inventor in New York would not have to meet the rigorous standards for obtaining a patent and his right to exclude copiers would not be confined to a design patent's 14 year limit. 35 U.S.C. §§ 171, 173. When the subject matter is potentially patentable the state interest in protecting the manufacturer from dilution must yield to the national interest in uniform patent law.

Accordingly, defendants' motion for summary judgment dismissing plaintiffs' fourth claim is granted.

So ordered.